**E-FILED**
Monday, 20 November, 2006  03:58:46 PM
Clerk, U.S. District Court, ILCD

Mr. Mario R. Lendos
Fed.Reg.No.: 13334-026
Federal Correctional Institution
1900 Simler Avenue
Big Spring, Texas 79720

In Propria Persona



FILED

NOV 2 0 2006

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## IN THE

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF ILLINOIS

## (AT ROCK ISLAND)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 4:06-CV-4066 |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| v. ) | PETITIONER'S REPLY BRIEF IN |
| ) | OPPOSITION TO THE |
| MARIO R. LENDOS, ) | GOVERNMENT'S RESPONSE TO |
| ) | MOTION UNDER TITLE 28 |
| Defendant/Petitioner. ) | U.S.C. § 2255 PROCEEDING |
| ) | |
| _____ ) | |

Comes now, Petitioner, Mario R. Lendos, in propria persona, to respectfully file his Reply Brief opposing the Government's Response under Title 28 U.S.C. Section 2255. This motion is filed pursuant to the Federal Rules of Criminal and Civil Procedure, Rule 1101(e) of the Federal Rules of Evidence, the Rules Governing Title 28 U.S.C. Section 2255 Proceedings, and the Records and Files of this case, and any such hearing on the matter the Court deems appropriate.

I

**SUMMARY DISMISSAL IS IMPROPER AND AN EVIDENTIARY HEARING IS REQUIRED, WHERE MATERIAL ISSUES OF FACT REMAIN IN DISPUTE, WHICH IF TRUE, PROVES THAT MR. LENDOS' RIGHT TO APPEAL SURVIVES WHEN THE AGREEMENT TO WAVE HIS DIRECT APPEAL RIGHTS WAS NOT KNOWINGLY AND INTELLIGENTLY MADE, AND WAS THEREFORE INVOLUNTARY AS A MATTER OF LAW**

## Discussion

Mr. Lendos respectfully submits that summary dismissal; as the Government suggests, is entirely inappropriate at this juncture of his proceedings. The gravamen of Mr. Lendos' claims is imbued in appellate counsel's failure to perfect a direct appeal for him, in direct defiance of his, and his various family members requests to do so, and in counsel's advice rendered in signing his plea agreement. Id. Title 28 U.S.C. Section 2255 Motion, Ground One at 5-A-B. These were material issues of fact; occurring outside this Honorable Court's record, which if true, would entitle Mr. Lendos to relief. Declarations were submitted, clearly in support of Mr. Lendos' claims, and were duly made in proper evidentiary form and submitted thereto. Id. Petitioner's Exhibits A-B-C-D.

The Government responds that this is all well and good, but even assuming those facts to be true; that defense counsel patently defied Mr. Lendos' requests to file an appeal, Mr. Lendos has essentially waived all of his rights to a direct appeal because "[h]e makes no assertions that

(2)

his attorney was ineffective in the negotiation of the plea agreement." Id. Government's Response at 7-8.

Mr. Lendos respectfully submits, that although the Government is generally correct that a waiver of appeal, even in a criminal case is normally valid and binding, it "[d]oes not, in every instance, foreclose review." Id. United States v. Mason, 343 F.3d 893, 894 (7th Cir. 2003)(quoting United States v. Sines, 303 F.3d 793, 798 (7th Cir. 2002).

Indeed, exceptions to the appeal waiver rule denoted in the Government's response are applicable on a number issues where; for example, the plea agreement containing the waiver may have preserved some issue for appeal. Id. United States v. Behrman, 235 F.3d 1049, 1052 (7th Cir. 2000). Or, if the plea agreement turns out to be unenforceable, "[m]aybe because the government committed a material breach or the plea was involuntary on the part of the defendant, the waiver falls with the agreement and the appellant can appeal." Id. Mason, at 894, quoting, United States v. Woolley, 123 F.3d 627, 632 (7th Cir. 1997); United States v. Gonzalez, 309 F.3d 882, 886 (5th Cir. 2002); United States v. Keresztury, 293 F.3d 750, 759-60 (5th Cir. 2002).

It is here, this Circuit has long held "[a] waiver of right to appeal does not completely foreclose review of a sentence under all circumstances." Id. Woolley, 123 F.3d at 632. In United States v. Schmidt, 47 F.3d 188, 190 (7th Cir.

1995), this Circuit held, notwithstanding a valid appeal waiver, "[a] defendant could appeal his sentence if the trial court relied on a constitutionally impermissible factor[.]" Id. See also, United States v. Feichtinger, 105 F.3d 1188 (7th Cir.), cert. denied, 520 U.S. 1281, 138 L.Ed.2d 223, 117 S.Ct. 2467 (1997)(same conclusion).

> **A.    Mr. Lendos' Appeal Waiver Cannot Be Knowingly And Intelligently Made, And Therefore Voluntary Under The Law, Where The Undisputed Record Now Before This Court Reveals That His Attorney Told Him That He Would In Fact Be Receiving A Sentence From Between 87 To 108 Months, Mr. Lendos Signed His Plea Agreement Under That Premise, And Yet, He Ultimately Received A Sentence Of 175 Months**

Mr. Lendos respectfully submits, that for an appeal waiver to be valid, it "[m]ust be express and unambigious," and the record must clearly demonstrate that it was "[m]ade knowingly and voluntarily." Id. Woolley, 123 F.3d at 632, quoting United States v. Hendrickson, 22 F.3d 170, 174 (7th Cir. 1994), and United States v. Agee, 83 F.3d 882, 885 (7th Cir. 1996)(citing United States v. Wenger, 58 F.3d 280 (7th Cir.), cert. denied, 516 U.S. 936, 133 L.Ed.2d 245, 116 S.Ct. 349 (1995)).

To determine whether or not Mr. Lendos' "[a]ppeal waiver is valid[,]" this Circuit looks "[t]o the content and the language of the plea agreement itself and refer[s] to the colloquy between the defendant and the judge if necessary." Id. Woolley, 123 F.3d at 632.

Mr. Lendos further submits, that inextricably

intertwined in his case, are material issues of fact that occurred outside the Court record, which if true, would establish that the signing of his plea agreement waiving his rights to appeal, was not truly knowingly and intelligently made. This is especially true, when as here, the agreement was signed under the misguided premise that he would only be receiving an 87 to 108 month sentencing exposure, and thus, no issues to appeal, when in fact, he received a 175 month sentence.

In Mr. Lendos' moving papers, he submitted a declaration, duly made in proper evidentiary form, that: "[o]n or about May 12, 2005, Mr. Hanna [his attorney of record] presented [him] a document entitled: 'Plea Agreement' to sign." Id. Petitioner's Exhibit "A" Declaration of Mario R. Lendos, at 2 ¶ 5. Therein, "[M]r. Hanna asserted that although the Plea Agreement denoted a ten (10) year prison sentence [Mr. Lendos] would be signing for, he explained that the District Court after taking into consideration all of [Lendos'] Base Offense Level Point reductions, [he] would receive a prison sentence of between eighty-seven (87) to one-hundred and eight (108) months." Id.

Mr. Lendos further attested that "[M]r. Hanna stated [his] Base Offense Level Point reductions would be minus three (3) points for acceptance of responsibility and Remorse, and two (2) additional points would be reduced for a Safety Valve reduction. On that basis, [Mr. Lendos] agreed

to sign the Plea Agreement." Id.

At Mr. Lendos' Change of Plea Hearing, the District Court's admonishments brought to light Mr. Lendo's first hint of Mr. Hanna's inconsistent promises; but only then, to the extent of a 120 month sentence, not the 175 months he ultimately received. The Court stated: "[S]o, in other words, if the guidelines were to come in lower than 120 months, I would ignore the guidelines; I would have to impose the 120 month sentence. If the guidelines came in above 120 months, then I would be looking more to the guidelines for guidance." Id. Government's citation of Change of Plea Transcript at P.Tr. 14-16, Government's Response at 9.

Here, the "record" actually supports Mr. Lendos' declaration regarding the initial confusion engendered on the part of Mr. Hanna. Mr. Lendos specifically attested that: "[M]r. Hanna asserted that although the Plea Agreement denoted a ten (10) year prison sentence [Mr. Lendos] would be signing for, [Mr. Hanna] explained that the District Court after taking into consideration all of [Lendos'] Base Offense Level Point reductions, [he] would receive a prison sentence of between eighty-seven (87) and one-hundred (108) months[,]" and that he ultimately "[p]led guilty with the understanding that [he] would be receiving a prison sentence of between eighty-seven (87) and one-hundred and eight (108) months" Id. Petitioner's Exhibit "A" at 2 ¶¶ 5-6,

respectively. These "facts" remain undisputed by the Government.

Indeed, Mr. Lendos further attested that "[a]pproximately three (3) days before" his Sentencing Hearing of September 22, 2005, "[M]r. Hanna came to the county jail where [he] was housed" and "[t]old [him he] was now being charged for Obstruction of Justice, and the Government was trying to give [him] twenty (20) or more years in prison." Id. at 2 ¶ 7. However, Mr. Hanna also told Mr. Lendos: "[d]o not worry" and "[e]xplained that he could beat the Obstruction of Justice charge because it was no big issue." Id. at 2-3 ¶ 7.

Mr. Lendos further attested that "[j]ust a few minutes prior" to his Sentencing Hearing, Mr. Hanna told him that although the "[G]overnment did not drop the Obstruction of Justice of charge[,]" Mr. Hanna "[a]gain stated for [him] not to worry, in that [Mr. Hanna] was assured of a sentence of between eighty-seven (87) and one-hundred and eight (108) months." Id. at 3 ¶ 8.

It was only when Mr. Lendos was ultimately sentenced to the "[o]ne-hundred and seventy-five months" that he "[l]ooked to Mr. Hanna in disbelief and [Hanna] just froze[,]" that Mr. Lendos vehemently complained. Id. It was there also, that the District Court expressly told Mr. Lendos of his right to appeal, and that "[M]r. Hanna has an absolute responsibility to file that notice for [him] if

that [was his] wish." Id. Sentencing Transcript of September 22, 2005, at 94:13-14; Petitioner's Exhibit "A" at 3 ¶ 8.

Although all of the above "facts" remain undisputed by the Government, unfortunately, the Government contends throughout its brief that "[a]t no point in his motion does [Mr. Lendos] assert that his counsel was ineffective in the negotiation of the plea agreement[,]" (id. govt. response at 7); Mr. Lendos "[m]akes no assertion that his attorney was ineffective in the negotiation of the plea agreement[,]" (id.), and that: "[t]here is nothing in the record that even remotely suggests that [Mr. Lendos] did not knowingly and voluntarily enter into the plea agreement, including the waiver provisions, or that [Mr. Lendos'] counsel acted unreasonably when he negotiated a plea agreement that contained waiver provisions." Id. at 8.

With all due respect; on the merits, the Government's argument fails because it ignores "facts" in the record and relies on an incorrect legal standard governing this case. To begin with, Mr. Lendos, as a pro se indigent prisoner, occupies "[a] unique position in the law" and is "[t]o be afforded 'the benefit of any doubt'" in the liberal construction and resolution of his claims. Id. Brown v. Roe, 279 F.3d 742, 745-46 (9th Cir. 2002)(compiling cases). It is here, even "[u]nincluded allegations of apparent facts may treated as part of the complaint for further investigation" of his claims. Id. Williams v. Lockhart, 849 F.2d 1134, 1138 (8th Cir. 1988).

Moreover, Mr. Lendos submits that because various courts have long held; in withdrawal of plea cases, that counsel engages in constitutionally ineffective assistance by a showing that counsel "[g]rossly mischaracterized the likely outcome" of a proceeding, this same premise holds true for appeal waivers and "[t]he waiver falls with the agreement and the appellant can appeal". Id. United States v. Davis, 410 F.3d 1122, 1126 (9th Cir. 2005)(relying on Hill v. Lockhart, 474 U.S. 52, 88 L.Ed.2d 203, 106 S.Ct. 366 (1985)(other citations omitted)); Mason, 343 F.3d at 894, respectively.

In other words, Mr. Lendos' appeal waiver could not have been a knowing and intelligent one, when counsel "grossly mischaracterized" his sentencing exposure, to which he has essentially received double the prison sentence counsel told him he would be receiving. Mr. Lendos submits that to hold counsel's erroneous advice proper in his case, would otherwise render Hill's caveats meaningless and eviscerate the distinctions made between a defendant's understanding of his defense counsel's advice, vis-a-vis, a district court's admonishments.

Accordingly, the Government's argument must fail, where as here, the record undisputably reveals that Mr. Lendos' waiver of appeal was not made in a knowing and intelligent manner, and was therefore "[i]nvoluntary" as a matter of law. Id. Hill, 474 U.S. at 56.

## II

**THE GOVERNMENT'S RESPONSE FAILS TO TAKE INTO CONSIDERATION THAT POST <u>FLORES-ORTEGA</u>, WHEN DEFENSE COUNSEL FAILS TO FILE AN APPEAL, IN DIRECT DEFIANCE OF A DEFENDANT'S REQUEST TO DO SO, THE DEFENDANT WILL BE ENTITLED TO A DIRECT APPEAL REGARDLESS OF ANY WAIVER PROVISIONS IN THE PLEA AGREEMENT AND WITHOUT ANY SHOWING ON COLLATERAL REVIEW THAT HIS APPEAL WILL LIKELY HAVE MERIT**

### Discussion

Assuming, arguendo, Mr. Lendos respectfully submits that the central question presented in his case, is whether an attorney who fails to file a notice of appeal, in direct defiance of his client's request to do so, is constitutionally ineffective, with prejudice presumed from the forfeiture of the proceeding altogether, when the client also waived appeal in his plea agreement.

Mr. Lendos submits that the answer to this question can only be a resounding yes, where: 1) <u>Flores-Ortega</u> expressly held that "[a] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable[,]" (<u>id</u>. 528 U.S. at 477), 2) prejudice is presumed because the lawyer's professionally unreasonable acts caused "[t]he forfeiture of a proceeding itself." (<u>id</u>. 528 U.S. at 483), and 3) although "[a] defendant who executes a waiver may sign away the right to appeal . . . he or she does not sign away the right to the effective assistance of counsel." <u>Id</u>. <u>Campusano v. United States</u>, 442 F.3d 770, 777 (2nd Cir. 2006). See also,

United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005)(holding that the Flores-Ortega presumption of prejudice rule applies even where defendant waived appeal in a plea agreement "[r]egardless of whether, from the limited perspective of collateral review, it appears that the appeal will not have any merit."); United States v. West, 240 F.3d 456 (5th Cir. 2001)(granting out-of-time direct appeal and reinstating criminal judgment on the docket for attorney's failure to perfect appeal).

### A. Defense Counsel Defied His Client's Request To Appeal Stating That He Was Unable To Do The Case Because No More Actions Were Available.

The first part of the Flores-Ortega test entails whether or not counsel defies a defendant's request to appeal, or incorrectly advises the defendant that "[n]o appeal was possible[.]" Id. Campusano, 442 F.3d at 775, (citations omitted). If either is shown, the defendant "[m]ust be granted the opportunity to appeal" (id.), unless counsel properly files an Anders brief. See, e.g., United States v. Tabb, 125 F.3d 583, 586 (7th Cir. 1997)(holding that if counsel wishes to withdraw from the case because he believes no nonfrivolous grounds for appeal exist, an Anders brief must be filed "[e]xplaining why any potential arguments have no merit.")(citing Anders v. California, 386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396 (1967)).

In Mr. Lendos' moving papers he attested that right after he was sentenced, "[t]he Judge then said that [he] had

a right to appeal and that Mr. Hanna [defense counsel] had an absolute responsibility to file a Notice of Appeal for [him]." Id. Petitioner's Exhibit "A" Declaration of Mario R. Lendos at 3 ¶ 8. See also, Sentencing Hearing Transcript of September 22, 2005, at 94:10-15. However, at that time, "[M]r. Hanna just turned and walked away . . . and did not say anything." Id. Exhibit "A" at 3 ¶ 8.

Thereafter, Mr. Lendos attested that he "[t]ried for a couple of days . . . to call Mr. Hanna to find out about [his] direct appeal" to no avail because "[M]r. Hanna's phone was blocked from accepting [his] collect calls." Id. at 3-4 ¶ 9. Mr. Lendos "[t]hen immediately called [his] Mother: Mrs. Esperanza Quintanilla, and told her to call Mr. Hanna to find out about filing [his] direct appeal." Id.

Mrs. Quintanilla then "[m]ade two (2) telephone calls to Mr. Hanna, with the help of Ms. Cindy Manzano" and asked him "[w]hat options [her] son had for an appeal." Id. Petitioner's Exhibit "B" Declaration of Esperanza Quintanilla at 2 ¶ 7 and Exhibit "C" Declaration of Cindy Manzano at 2 ¶ 5.

Mrs. Quintanilla attests that "[M]r. Hanna explained that he was unable to do [her] son's case, and that there was no more actions in [her] son's case[.]" Id. Exhibit "B" at 2 ¶ 7. Ms. Manzano attests that Mr. Hanna stated "[t]hat

**(12)**

he was unable to do so, as there was no choice or opportunity to appeal." Id. Exhibit "C" at 2 ¶ 5. See also Petitioner's Exhibit "D" Declaration of Rafael Arostico who also called Mr. Hanna on Mr. Lendos' behalf to "[f]ile an appeal for him[,]" but "[M]r. Hanna responded that he had done everything he could, but that Mr. Lendos had no possibility for appeal." Id. at 2 ¶ 5.

Mrs. Quintanilla further attests that she "[e]xpressed [her] intent . . . to hire another attorney" and that "[M]r. Hanna explained it would be a waste of [her] time, but it was [her] decision to make." Id. Exhibit "B" at 2-3 ¶ 7. Ms. Manzano attests that she "[a]sked about other counsel filing the appeal, and Mr. Hanna stated that if [they] wanted to waste [their] money, to go ahead and do so." Id. Exhibit "C" at 2 ¶ 5. Mr. Arostico attests that "[M]r. Hanna was adamant, in that he further stated if [they] wanted to waste [their] money by filing a direct appeal for Mr. Lendos, it was on [them] to hire another attorney for appeal." Id. Exhibit "D" at 2 ¶ 5.

Although the Government has sought to elide in its entirety the above material issues of fact occurring outside this Honorable Court's record, Mr. Lendos respectfully submits that Flores-Ortega's first prong has been met. Flores-Ortega expressly held: "[a] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in manner that is professionally unreasonable."

Id. 528 U.S. at 483.

Further, it is axiomatic that an attorney acts in a manner that is professionally unreasonable when he fails to file an Anders brief. Id. Tabb, 125 F.3d at 586. Here, even a cursory review of this record reveals it is devoid in its entirety of any such filing by Mr. Hanna on behalf of Mr. Lendos, even in the face of his pleading client's complaints.

Ironically, because Mr. Lendos was left to his own devices, he filed his own pro se Notice of Appeal on December 6, 2005. Id. Docket Entry # 34. This was part and parcel due to the fact that Mr. Hanna had told Mr. Lendos' family "[i]t was on [them] to hire another attorney for appeal" (id Exhibit "D" at 2, ¶ 5), Mr. Lendos' family could not pay appellate "[f]ees" ranging anywhere from "[t]hirty-thousand ($30,000.00) to fifty-thousand ($50,000.00) dollars" for another attorney (id. Exhibit "B" at 3 ¶ 8), and the Sentencing Court erred under Rule 32 of the Federal Rules of Criminal Procedure in failing to advise Mr. Lendos that if he was unable to afford counsel for his appeal, an attorney would have been appointed for him. Id. Sentencing Hearing Transcript of September 22, 2005, at 92-94. Mr. Lendos' Notice of Appeal was ultimately denied as untimely. Id. Docket Entry 41.

Accordingly, based on the above "record" evidence, and with the declarations (exhibits "A" thru "D"), which were duly made in proper evidentiary form, if true, would entitle

Mr. Lendos to the reinstatement of his appellate rights and court appointed counsel under Flores-Ortega's first prong, if not Anders itself and the Rule 32 error.

**B.   Flores-Ortega's Presumed Prejudice Prong Is Also Met In Mr. Lendos' Case.**

Mr. Lendos further submits, that if the above "record" evidence and extra-judicial record evidence is true, then Flores-Ortega's modified prejudice rule steps in as well. This is because if an attorney fails to perfect an appeal, even though his client has instructed him to do so, the client has been actually or constructively denied the assistance of counsel altogether, as opposed to a mere finding that counsel performed poorly, which obviates the need to establish the second prong of the Strickland test, i.e., proof that the client was prejudiced. Id. Flores-Ortega, 528 U.S. 470, 483-84, (citing Strickland v. Washington, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984); United States v. Cronic, 466 U.S. 648, 659 (1984); Penson v. Ohio, 488 U.S. 75, 88-89 (1988)).

Indeed, the Flores-Ortega Court went to great lengths to explain that it would be "[u]nfair to require an indigent, perhaps pro se, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." Id. 528 U.S. at 486, (internal citations omitted)(emphasis in original).

In the end analysis, Flores-Ortega's modified prejudice

**(15)**

rule holds only the requirement: "[R]ather we require the defendant to demonstrate that, but for counsel's deficient performance, he would have appealed." Id.

Therefore, Mr. Lendos' respectfully submits that, a fortiori, manifests in his case of his desire to file an appeal, through the declarations presented in support thereof, and the pro se filing of his own Notice of Appeal. Id. Petitioner's Exhibits "A" thru "D"; Docket Entries 34 and 41.

C.    **Mr. Lendos' Case Appears To Be One of First Impression In The Seventh Circuit; In Light Of Flores-Ortega, Where A Defendant's Waiver Of Appeal Is A Distinction Without A Difference When Counsel Defies The Defendant's Request To Appeal And Fails To File An Anders Brief.**

With all due respect, the Government fails to mention that the "facts" of Mr. Lendos' case may represent a first impression question in this Circuit. Mr. Lendos respectfully submits that to his knowledge, the Seventh Circuit has yet to squarely confront the issue of ineffective assistance of appellate counsel; in light of Flores-Ortega, where a defendant, assuming arguendo, properly waived his right to appeal, but subsequently told counsel he wanted to appeal and counsel thereafter defied that request and failed to file an Anders brief. Although Tabb set forth defense counsel's mandates under Anders from United States v. Wagner, 103 F.3d 551 (7th Cir. 1996), it appears only the Second and Tenth Circuits have fully briefed the issues raised herein.

**(16)**

For example, the Second Circuit in Campusano, the defendant's "[p]lea agreement contained a promise not to appeal or otherwise challenge his sentence under 28 U.S.C. § 2255, provided his sentence fell within a stipulated range of 108 to 135 months." Id. 442 F.3d at 772. The "[d]istrict court imposed a sentence of 108 months" and "[n]o direct appeal was filed." Id.

Mr. Campusano then "[f]iled a pro se motion pursuant 28 U.S.C. § 2255" alleging, inter alia, "[t]hat he twice timely requested that his counsel file a notice of appeal but that his counsel failed to do so." Id. Mr. Campusano "[r]eferenced the general per se rule created by Flores-Ortega that failure to file a requested appeal constitutes ineffective assistance and that no independent showing of prejudice need be made in such cases." Id.

The "[d]istrict court denied Campusano's motion in its entirety, holding, inter alia, that '[u]nless a defendant asks his attorney to file an appeal that raises one of the permitted grounds for appeal despite the plea waiver, the per se rule' that failure to file a requested appeal constitutes prejudice 'cannot apply.'" Id.

Much like here, the Government argued on appeal, "[t]hat all of Campusano's substantive claims were precluded by his waiver of appeal." Id. at 773. The Second Circuit reversed and remanded, however, for an evidentiary hearing for proper credibility determinations and findings of fact on whether or not defense counsel defied Campusano's request

**(17)**

to file his appeal. Id. at 777. The Second Circuit instructed the district court that if it ultimately found: "[C]ampusano did give such an instruction, he is to be allowed a direct appeal." Id.

Along the way, the Court expressly held despite these plea waivers, "[w]e do not cut corners when Sixth Amendment rights are at stake[,]" especially where "[t]he concern animating Flores-Ortega, that defendant's not be forced by attorney error to accept 'the forfeiture of a proceeding itself' is a powerful one even where the defendant is the only person who believes an appeal would be worthwhile." Id., (citing Flores-Ortega, 528 U.S. at 483)).

The Tenth Circuit in Garrett, also held that the defendant was "[e]ntitled to [an] evidentiary hearing to determine whether he actually requested that counsel file notice of appeal and counsel failed to do so, notwithstanding that defendant waived right to appeal in plea agreement." Id. 402 F.3d at 1262, (emphasis added).

In so holding, the Court noted that prior to Flores-Ortega, "[m]ost courts . . . have held that a defense attorney does not render ineffective assistance by failing to file a notice of appeal where the defendant has effectively waived his right to appeal." Id. at 1266. However, the Court ruled that "[t]his proposition cannot be reconciled with the Supreme Court's holding in Flores-Ortega" and the Court's statements in another Tenth Circuit case, "[w]hich [was] decided without the guidance of Flores-

Ortega." Id. at 1266, and n. 6, (citation omitted).

In the end, the Tenth Circuit ruled that: "[i]f Mr. Garrett actually asked counsel to perfect an appeal and counsel ignored the request, he will be entitled to a delayed appeal . . . [r]egardless of whether, from the limited perspective of collateral review, it appears that the appeal will not have any merit." Id. at 1267, (citing Flores-Ortega, 528 U.S. at 477, 484-85). 1/.

> **D. An Evidentiary Hearing Is Warranted, Based On The Broader Constitutional Question Presented In Mr. Lendos' Case, Where The Court Must First Resolve The Question Of Whether Or Not Defense Counsel Defied His Request To File An Appeal.**

Mr. Lendos respectfully submits that based upon the available case precedent regarding appeal waiver pleas, in conjunction with Flores-Ortega, he is entitled to an evidentiary hearing for credibility determinations and findings of fact on the broader constitutional question to detemine if Mr. Hanna defied his requests to file a direct appeal. In other words, material issues of fact remain in dispute in Mr. Lendos' case, that if true, would entitle him to the reinstatement of his direct appeal rights.

Mr. Lendos further submits that the evidentiary hearing process compelled in the Campusano and Garrett opinions, is

---

1/ Mr. Lendos respectfully gives this Honorable Court judicial notice of two additioanal opinions to help in its review of this evolving issue in his case from the 4th & 6th Circuits that; although are in fact cited in the latest (October 15, 2006) Shepards Federal Citation Service at FCI Big Spring from the Campusano opinion as following (f) its holding, they are cited with the LEXIS service which the Institution does not have. The 4th Circuit is cited as: "2006 USDist LX52995" and the 6th Circuit is cited as: "2006 USDist 25920."

consistent as well, with non-appeal waiver <u>Flores-Ortega</u> case precedent. See, e.g., <u>Frazer v. South Carolina</u>, 430 F.3d 696 (4th Cir. 2005)(holding counsel's mere failure to consult with defendant about appeal entitled him to new appeal in light of <u>Flores-Ortega's</u> prerequisites); <u>West</u>, <u>supra</u>, 240 F.3d at 456 (5th Cir.)(granting out-of-time appeal in light of <u>Flores-Ortega</u>); <u>Blancas v. United States</u>, 344 F.Supp.2d 507, 516 (W.D.Tex. 2004)(holding evidentiary hearing required in light of <u>Flores-Ortega</u>, where defendant alleged he told counsel to file an appeal, but counsel did not do so, and defendant contended he would have appealed, but for counsel's deficiencies).

## CONCLUSION

It has been said, that in order for truth to exist at all, it requires two people. One to speak it. The other, to hear it. Mr. Lendos respectfully submits that he has spoken the truth. Contrary to the Government's assertions, and even assuming defense counsel did not grossly mischaracterize his sentencing exposure; thus voiding the appeal waiver altogether, that truth extends beyond the mere words written on these pages to developing case precedent, with summary dismissal entirely improper at this juncture of Mr. Lendos' proceedings. This is especially true in this case, where it is beyond cavil that ineffective assistance of counsel claims are mixed questions of law and fact. The former, it appears, the Government seemingly elides in its response brief.

Distilled to its essence, if as the Second and Tenth Circuits have held: then appeal waivers are really distinctions without a difference in light of Flores-Ortega, when; and only when, defense counsel defies his pleading client's request to file an appeal. Mr. Lendos therefore submits, that the "facts" as properly presented in his case mirror those caveats set forth in Flores-Ortega and he should be entitled to an evidentiary hearing on his claims.

WHEREFORE, Mr. Lendos is respectfully requesting that this Honorable Court grant him an evidentiary hearing for credibility determinations and findings of fact. Mr. Lendos further submits that this Court has the ability to grant any other relief in the protection of his constitutional rights as it deems appropriate, and under the liberal construction parameters of a pro se indigent prisoner's pleadings.

**Dated: November 16, 2006.**

**On The Brief:**                                    **Respectfully submitted,**

John R. Sargent, Jr.                              Mario R. Lendos

                                                  **In Propria Persona**

**(21)**

# C E R T I F I C A T E   O F   S E R V I C E

I, __Mario R. Lendos_____, hereby certify that I have served a true and correct copy of the following:

PETITIONER'S REPLY BRIEF IN OPPOSITION TO THE
GOVERNMENT'S RESPONSE TO MOTION UNDER TITLE
28 U.S.C. § 2255 PROCEEDING,

which is deemed filed at the time it was delivered to prison authorities for forwarding,*<u>Houston v. Lack</u>, 487 U.S. 266 (1988), upon the (plaintiff/defendant) (petitioner/respondent) (appellant/appellee) and/or its attorney(s) of record by placing same in a sealed first-class postage prepaid envelope addressed to:

UNITED STATES ATTORNEY'S OFFICE
1830 2nd AVENUE SUITE 320
ROCK ISLAND, IL 61201

and deposited into this institution internal mail system located at FCI BIG SPRING, 1900 Simler Avenue, Big Spring, Texas 79720, on this __16___th day of __November_____,200_6__

*Marie Sendos.*
Mario R. Lendos
Fed.Reg.No.: 13334-026
Federal Correctional Institution
1900 Simler Avenue
Big Spring, Texas 79720

*Pursuant to Fed.R.App.P25(a)(2)(c), "A paper filed by an inmate confined in an institution is timely filed if deposited in the institution's internal mail system on or before the last day for filing."