E-FILED
Tuesday, 09 January, 2007  05:05:34 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MARIO LENDOS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 06-4066 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

### O R D E R

This matter is now before the Court on Petitioner, Mario Lendos' ("Lendos"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Government's Motion to Dismiss [#7] is GRANTED, and Lendos' § 2255 Motion [#1] is DISMISSED.

### BACKGROUND

In August 2004, Lendos was charged in a two-count Indictment of conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in the United States District Court for the Central District of Illinois. On May 19, 2005, Lendos entered a guilty plea pursuant to a written plea agreement to the possession charges. On September 22, 2005, he was sentenced to 175 months' imprisonment, followed by a term of supervised release. The conspiracy charges in the Indictment were dismissed.

Although he waived his right to appeal and pursue collateral relief pursuant to § 2255 in ¶¶ 10 and 11 of the written plea agreement, Lendos attempted to pursue a direct appeal. On March 3, 2006, the Seventh Circuit dismissed the appeal as frivolous. Lendos has now filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.

§ 2255. In his Motion, Lendos attempts to collaterally attack his conviction based on allegations that he received ineffective assistance of counsel. This Order follows.

**Discussion**

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), *citing* Scott v. United States, 997 F.2d 340 (7th Cir. 1993). A § 2255 motion is not, however, a substitute for a direct appeal. Doe v. United States, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S. Ct. 205 (1995).

Here, Lendos would appear to be barred from bringing this § 2255 motion by virtue of the fact that his plea agreement contains a waiver of his right to bring a collateral attack on his sentence. Lendos makes two arguments of ineffective assistance: (1) that counsel was ineffective for failing to pursue a direct appeal, and (2) that counsel was ineffective for withdrawing his objections at sentencing. While Lendos does assert that he should be resentenced, he makes no attempt to avoid the impact of this waiver by asking the Court to vacate his guilty plea and does not present any evidence indicating that but for his counsel's ineffective assistance, he would not have entered into the plea agreement. Perhaps this is because he believes that the plea bargain's substantial advantages outweigh its disadvantages. In any event, so long as the plea agreement stands, the waiver of the right to appeal or pursue collateral relief must generally be enforced. Id., *citing* United States v. Wagner, 103 F.3d 551 (7th Cir. 1996); Jones v. United States, 167

F.3d 1142, 1144 (7th Cir. 1999); United States v. Nelson, 124 F.3d 206, 1997 WL 374712, at *1 (7th Cir. July 1, 1997).

However, this circuit has recognized that the right to pursue a collateral attack pursuant to § 2255 survives "with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones, 167 F.3d at 1144-45. Accordingly, while Lendos does not specifically contend that he received ineffective assistance of counsel in connection with the negotiation of the waiver itself, the Court will address his claim to the extent necessary to determine whether the negotiation of the various waiver provisions is implicated.

The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690.

To satisfy Strickland's prejudice prong in this case, Petitioner must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, he would not have entered the guilty plea and would have insisted upon going to trial. United States v. Woolley, 123 F.3d 627, 635 (7th Cir. 1997). "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely

making such an allegation is insufficient.'" United States v. Ryan, 986 F.Supp. 509, 513 (N.D.Ill. 1997), *citing* Key, 806 F.2d at 139; *see also* McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, Lendos asserts that counsel was ineffective because he failed to pursue a direct appeal and withdrew his objections at sentencing. There are no specific factual assertions or claims to the effect that Lendos' attorney rendered ineffective assistance in negotiating the waiver provision of his plea agreement. He does not argue that but for the purportedly misleading advice of counsel concerning the waiver, he would have rejected the plea offer and insisted on going to trial and does not ask to set aside his plea agreement.

Furthermore, a review of the transcript of the plea hearing reveals that, along with a detailed discussion of the maximum sentence he could face depending on the nature of any past criminal conduct, Lendos received a lengthy explanation of the waiver provision and its consequences during the plea colloquy. As set forth below, this explanation was more than sufficient to remedy any misinformation (or lack of information) that may have been provided by his counsel with respect to the waiver provisions, and hence, he has failed to demonstrate actual prejudice under Strickland. This same dialogue also demonstrates the knowing and voluntary nature of Lendos' waiver and guilty plea, as well as his competency.

When the Court accepted Lendos' guilty plea, it held a lengthy change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 "provides protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and

collateral attacks." Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., *citing* United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Id., *citing* Thompson v. Wainwright, 787 F.2d 1447 (11th Cir. 1986); Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 97 S.Ct. at 1629.

After a careful review of the transcript of Petitioner's Rule 11 hearing, the Court finds that he has failed to overcome the strong presumption of verity which attached to the statements of voluntariness and understanding that he made during that hearing. The pertinent portion of the record reveals the following colloquy between Lendos and the Court after he was placed under oath:

> Q:   Now that you have been sworn, do you understand that your answers to my questions are subject to the penalties of perjury or of giving a false statement if you don't answer truthfully?
>
> A:   Yes.
>
> * * *
>
> Q:   Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?
>
> A:   No.
>
> Q:   Are you currently under the influence of any drug, medication or alcoholic beverage?
>
> A:   No.

* * *

Q: Are you fully satisfied with the counsel and advice that he has given you in this case?

A: Yes, I do.

Q: As I understand it, you have entered into a written plea agreement with the government; is that correct?

A: Yes, I do.

Q: And did you have a reasonable opportunity to have this read to you word for word in Spanish and discuss it with your attorney before you signed it?

A: Yes, last Tuesday, before that and Tuesday in both language, in English and Spanish.

Q: Okay. Does this plea agreement represent in its entirety every understanding that you have with the United States?

A: Yes, it do.

Q: Do you understand the terms of the agreement?

A: Yes, I do.

* * *

Q: The bottom of page three and top of page four is a section entitled Waiver of Right of Appeal from Conviction and Sentence. In that section you're giving up the right to file a direct appeal to the Court of Appeals in Chicago. In such an appeal, a defendant could claim that there was something unlawful or unconstitutional about the legal process that was used in the case or the sentence itself. That could even include a claim that your attorney had not effectively represented you in the case. In this paragraph, you're giving up the right to file such an appeal, with two very narrow exceptions. The first one, if the Court were to impose a sentence that's beyond the maximum provided by the statute, you could appeal that. But in this case, the maximum sentence provided by the statute is life in prison, so that's not going to happen.

> The other thing you're reserving that is applied by case law is that you could still make a claim that your attorney did not effectively represent you regarding the negotiation of this plea agreement itself. But other than that, you would have no right to challenge the sentence by direct appeal.
>
> Do you understand that?

A:   Yeah, I understand.

Q:   Any questions at all about that?

A:   So far, no.

Q:   Okay. And then the next paragraph, paragraph 11, that deals with a different kind of waiver. It's called a Waiver of Right to Collateral Attack. That refers to a proceeding that would be filed here in the trial court. That's normally done by way of what's called a petition for writ of habeas corpus. In that kind of a proceeding, again, someone could claim that there was something unlawful or unconstitutional about either the process or the sentence. Again, that could include a claim that your attorney had not effectively represented you. In this paragraph, you're giving up the right to do that.

Do you understand?

A:   Yes, I do.

Q:   So, as a result of these waivers, the bottom line is if you plead guilty and I accept your plea and I sentence you, when you walk out of court the day you're sentenced, even if you're very unhappy with the sentence and you feel it was wrong, you would have almost no opportunity to challenge it in some other proceeding. Do you understand?

A:   Yes, I do.

\* \* \*

Q:   Has anyone made any other or different promise or assurance of any kind to you in an effort to induce you to plead guilty?

A:   No.

Q:   Has anyone attempted in any way to force you to plead guilty?


A: No.

Q: Are you pleading guilty of your own free will because you are guilty?

A: I plead guilty.

Q: But my question was, Are you pleading guilty on your own free will because you are guilty?

A: Yes, I do.

Q: Okay. Do you understand that the offense to which you are pleading guilty is a felony offense? If your plea is accepted, you will be adjudged guilty of that offense. That adjudication may deprive you of valuable civil right such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm.

Do you understand all those things?

A: Yes, I do.

* * *

Q: We've already discussed the penalties for this offense, but I want to state them once again. A mandatory minimum term of ten years; that's 120 months. . . . Do you understand all of these possible consequences of your plea?

A: Yes, I do.

* * *

Q: So, the bottom line is that at the time of sentence, the Court may end up imposing a sentence — depending on the circumstances — that is either above the guideline range or within the guideline range or below the guideline range. However, since there is a mandatory minimum sentence, this ten years, I cannot impose a sentence below that.

Do you understand that?

A: Yeah, I understand that.

Q: So, in other words, if the guidelines were to come in lower than 120 months, I would ignore the guidelines; I would have to impose the 120-month sentence. If the guidelines come in

> above 120 months, then I would be looking more to the guidelines for guidance.
>
> Do you understand?

A: Yes, I do.

Q: Okay. Now, the Court will not be able to determine this advisory guideline range for your case until after the presentence report has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer and that the sentence imposed may be different from any estimate your attorney may have given you up to this point.

Do you understand that?

A: Yes, I do.

Q: Mr. Hanna, what's the best advice you've been able to give him concerning where you think the sentence is going to come in?

A: Well, if he's at 36 points, the worst-case scenario would be 235 months. He has a three-point reduction. I would have to look in my book but I just gave him the worst-case scenario.

Q: Is that correct? Have you discussed that kind of time?

A: Yes.

Q: Okay. All right. And again, at the time of sentencing — but that's certainly higher than 120 months mandatory minimum. So, assuming that that is basically correct, at the time of sentencing, the Court will impose a sentence either above the range, within the range or below the range, but not below the 120 months.

Do you understand?

A: Yes, I do.

* * *

Q: Do you understand that under some very limited circumstances you would have a right to appeal the sentence that I impose?

> A:    Yes, I do.
>
> * * *
>
> Q:    Do you understand that by entering into this plea agreement and entering a plea of guilty you will have waived or given up almost all of your right to appeal or collaterally attack any part of the sentence?
>
> A:    Yes, I do.

(Change of Plea Transcript at 3 -17.)

For the first time in his traverse, Lendos attempts to circumvent his waiver by arguing that his plea agreement was not voluntary because counsel gave him bad advice regarding his sentence, informing him that he would only receive a sentence between 87 and 108 months. In order for this claim to succeed, he must establish that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of his probable sentence; he must also show that this deficient advice was a decisive factor in his decision to plead guilty. United States v. Cieslowski, 410 F.3d 353, 358-59 (7th Cir. 2005).

At the change of plea hearing, the Court made Lendos well aware that there was a mandatory minimum that would result in a sentence of at least 120 months' imprisonment, which should have dispelled any expectation that Lendos may have had that he might receive a sentence in the 87-108 month range. Yet Lendos said nothing to the contrary and more than once indicated that he understood that he would be receiving a sentence of at least 120 months.

There is no indication that counsel failed to learn the facts of the case or that he failed to make a good faith estimate of the sentencing range. To the contrary, during the change of plea hearing, counsel stated and Lendos acknowledged that counsel's best estimate of a worst-case scenario was 235 months. The 175 months that Lendos received

at sentencing fell squarely within this range. Thus, contrary to Lendos' bald protestations, the record confirms that counsel not only provided him with a good faith estimate of his sentencing range, but also that counsel's estimate proved to be quite accurate. Counsel's performance more than meets the standard of adequacy required under Cieslowski.

The Court finds that nothing in the record even remotely suggests that Lendos did not knowingly and voluntarily enter the plea agreement, including the waiver provisions contained therein. To the contrary, it clearly indicates that he expressly indicated his intention to plead guilty and waived his rights to appeal or pursue collateral relief on more than one occasion after extensive questioning and explanation by the Court. The record also demonstrates that the Court provided him with a lengthy and detailed explanation of his rights, the waiver provisions, and his possible exposure at sentencing that was more than adequate to supplement or correct any lack of information or misinformation that may have been provided by counsel. After receiving this explanation, Lendos proceeded to state that he was acting voluntarily and understood everything as it had been explained to him by the Court.

Therefore, regardless of his current protestations that counsel was less than diligent in his representation and provided ineffective assistance, the record before the Court unequivocally demonstrates that Lendos acted knowingly and freely in entering into the plea agreement, including the waiver provisions. Had he truly not wished to plead guilty, not understood the proceedings in which he participated, or been caught unaware by the potential sentencing range or waiver provisions, it would seem only reasonable that he would have made some attempt to correct the factual record or bring his plight to the attention of the Court.

Lendos has failed to demonstrate that ineffective assistance of counsel negated the knowing or voluntary nature of his plea or the waiver itself, that the waiver was a product of coercion, or that the trial court relied on some constitutionally impermissible factor, such as race, in imposing sentence. Accordingly, the Court now holds that Lendos' guilty plea and waiver of his right to pursue collateral relief were both knowing and voluntary and operate to bar him from pursuing further habeas corpus relief. This § 2255 Motion is therefore frivolous. See United States v. Richardson, 1998 WL 388590, at *3 (E.D.La. July 9, 1998) (finding that defendant's claims under § 2255 that his plea was involuntary and that the government had not met its burden of proving he possessed crack cocaine were barred by a valid waiver in his plea agreement).

## CONCLUSION

For the reasons set forth herein, the Court cannot find that there has been any credible showing that but for the alleged unprofessional errors of counsel, there is any reasonable probability that the result of this proceeding would have been different, as the record clearly demonstrates that Lendos knowingly, intelligently, and voluntarily entered into his plea agreement and waived his right to bring both an appeal and collateral attack on his conviction and sentence. Accordingly, the Government's Motion to Dismiss [#7] is GRANTED, and Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [#1] is DISMISSED. This matter is now terminated.

ENTERED this 9th day of January, 2007.

        s/ Michael M. Mihm
        Michael M. Mihm
        United States District Judge